**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Thomas "Tommy" Maness, Jr., | ) |
| | ) |
|     Plaintiff, | )   MDL NO. 2873 |
| | ) |
| v. | )   Master Docket No: |
| | ) |
| 3M COMPANY (f/k/a Minnesota Mining | )   2:18-mn-2873 |
| and Manufacturing Company); | ) |
| AGC CHEMICALS AMERICAS, INC.; | )   JUDGE RICHARD GERGEL |
| ALLSTAR FIRE EQUIPMENT; | ) |
| AMEREX CORPORATION; | )   Civil Action No: |
| ARCHROMA U.S., INC.; | ) |
| ARKEMA INC.; | )   COMPLAINT AND JURY DEMAND |
| BASF CORPORATION, individually and | ) |
| as successor in interest to Ciba, Inc.; | ) |
| BUCKEYE FIRE EQUIPMENT | ) |
| COMPANY; | ) |
| CARRIER GLOBAL CORPORATION; | ) |
| CB GARMENT, INC.; | ) |
| CHEMDESIGN PRODUCTS INC.; | ) |
| CHEMGUARD INC.; | ) |
| CHEMICALS INCORPORATED; | ) |
| CHEMOURS COMPANY FC, LLC; | ) |
| CHUBB FIRE LTD.; | ) |
| CLARIANT CORPORATION; | ) |
| CORTEVA, INC.; | ) |
| DAIKIN AMERICA, INC.; | ) |
| DEEPWATER CHEMICALS INC.; | ) |
| DUPONT DE NEMOURS, INC. (f/k/a | ) |
| DOWDUPONT INC.; | ) |
| DYNAX CORPORATION; | ) |
| E.I. DU PONT DE NEMOURS AND | ) |
| COMPANY; | ) |
| FIRE-DEX, LLC; | ) |
| FIRE SERVICE PLUS, INC.; | ) |
| GLOBE MANUFACTURING COMPANY | ) |
| LLC; | ) |
| HONEYWELL SAFETY PRODUCTS | ) |
| USA, INC.; | ) |
| INNOTEX CORP.; | ) |
| JOHNSON CONTROLS, INC.; | ) |

| | |
|---|---|
| KIDDE PLC, INC.; | ) |
| L.N. CURTIS & SONS; | ) |
| LION GROUP, INC.; | ) |
| MALLORY SAFETY AND SUPPLY LLC | ) |
| MILLIKEN & COMPANY; | ) |
| MINE SAFETY APPLIANCES | ) |
| COMPANY, LLC; | ) |
| MUNICIPAL EMERGENCY SERVICES, | ) |
| INC.; | ) |
| NATION FORD CHEMICAL COMPANY; | ) |
| NATIONAL FOAM, INC.; | ) |
| PBI PERFORMANCE PRODUCTS, INC.; | ) |
| PERIMETER SOLUTIONS, LP; | ) |
| RAYTHEON TECHNOLOGIES | ) |
| CORPORATION; | ) |
| RICOCHET MANUFACTURING | ) |
| COMPANY, INC; | ) |
| SAFETY COMPONENTS FABRIC | ) |
| TECHNOLOGIES, INC; | ) |
| SOUTHERN MILLS INC.; | ) |
| STEDFAST USA INC.; | ) |
| THE CHEMOURS COMPANY; | ) |
| TYCO FIRE PRODUCTS LP, as successor- | ) |
| in-interest to The Ansul Company; | ) |
| UNITED TECHNOLOGIES | ) |
| CORPORATION; | ) |
| UTC FIRE & SECURITY AMERICAS | ) |
| CORP., INC. (f/k/a GE Interlogix, Inc.); | ) |
| VERIDIAN LIMITED; | ) |
| W.L. GORE & ASSOCIATES INC.; | ) |
| WITMER PUBLIC SAFETY GROUP, | ) |
| INC., and | ) |
| DOE DEFENDANTS 1-20, fictious names | ) |
| whose present identities are unknown. | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

COMES NOW, Thomas "Tommy" Maness, Jr. (hereinafter, "Plaintiff"), by and through undersigned counsel, on knowledge as to their own actions, and otherwise alleges upon information and belief as follows:

2

**INTRODUCTION**

1.      Plaintiff hereby re-alleges and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

2.      This is an action for damages relating to Defendants' development, marketing, release, training users of, instructional materials, warnings, sale, handling, and use in connection with Aqueous Film-Forming Foam ("AFFF") containing Perfluorooctanoic Acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorononanoic acid ("PFNA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Hexafluoropropylene Oxide ("HFPO", also known as "Gen-X"), and / or their precursors and derivatives, and other fluorochemicals. For purposes of this Complaint, AFFF and the per- and polyfluorinated compounds described in this paragraph will be referred to collectively as "fluorochemical products."

3.      Plaintiff brings this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") and firefighter turnout gear ("TOG") containing "fluorochemical products."

4.      AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

5.      TOG is personal protective equipment designed for heat and moisture resistance in order to protect firefighters in hazardous situations. Most turnout gear is made up of a thermal liner, moisture barrier, and an outer layer. The inner layers contain PFAS, and the outer layer is often treated with additional PFAS.

6.      Defendants failed to warn users and consumers of their fluorochemical products'

3

persistence, bioaccumulation, and toxic properties, as well as the fluorochemical products' propensity to contaminate water supplies, which was known or knowable to the Defendants.

7.    Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF or TOG with knowledge that it contained highly toxic and bio persistent PFAS, which would expose end users of the product to the risks associated with PFAS as well as result in the contamination of Plaintiff's public drinking water supply.

8.    Further, Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF or TOG which contained PFAS for use in firefighting.

9.    PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

10.    PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

11.    Defendants' PFAS-containing AFFF or TOG products were used by Plaintiff in their intended manner, without significant change in the products' condition. Plaintiff was unaware of the dangerous properties of Defendants' AFFF or TOG products and relied on Defendants' instructions as to the proper handling of the products. Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendants' AFFF or TOG products caused Plaintiff to develop the serious medical conditions and complications alleged herein.

12.     Through this action, Plaintiff seeks to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF or TOG products at various locations during the course of Plaintiff's training and firefighting activities and arising from the intentional, malicious, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with the contamination of the Plaintiff's drinking water supply with Defendants' fluorochemical products to which Plaintiff was exposed. Plaintiff further seeks injunctive, equitable, and declaratory relief arising from the same.

## JURISIDICTION AND VENUE

13.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

14.     Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Southern District of Ohio. Further, in accordance with CMO 3, Plaintiff designates the United States District Court for the District of Southern District of Ohio the home venue. Venue is originally proper in the District Court pursuant to 28 U.S.C. §1391 because it is the judicial district in which Plaintiff was a resident and/or citizen, a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

15.     The United States District Court for the Southern District of Ohio has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted, used and/or otherwise sold

fluorochemical products, including AFFF, to various locations, such that each Defendant knew or should have known that said products would be delivered and used to areas in the state of Ohio for active use by firefighters and other users during the course of training and firefighting activities and that the aforementioned chemicals would seep into the ground and/or contaminate water sources used for public consumption.

**PARTIES**

16.    Plaintiff Thomas "Tommy" Maness, Jr. is a citizen and resident of the State of Ohio.

17.    Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

18.    Based upon information and belief, Defendants' fluorochemical products were used in a manner resulting in the contamination of Plaintiff's drinking water supply.

19.    Plaintiff purchased and consumed water from public and/or private water suppliers in the United States which was contaminated with Defendants' fluorochemical products.

20.    As a result of his exposure to Defendants' AFFF and TOG products, Plaintiff was diagnosed with Testicular Cancer, which has caused Plaintiff to suffer severe personal injuries, pain, suffering, medical expenses, financial loss and emotional distress, including the fear of cancer recurrence.

21.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors, and/or sellers of PFAS-containing AFFF and TOG products or underlying PFAS containing chemicals used in AFFF and TOG production.  The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF and TOG products to various locations for use in fighting Class B fires such that each Defendant

knew or should have known said products would be delivered to areas for active use by Plaintiff during the course of training and firefighting activities, and/or would contaminate the drinking water used by Plaintiff.

22.    **Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company)** ("3M") is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

23.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

24.    **Defendant AGC Chemicals Americas, Inc.** ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341.

25.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

7

26.    **Defendant Allstar Fire Equipment** ("Allstar") is a California corporation and does business throughout the United States. Allstar has its principal place of business at 12328 Lower Azusa Road, Arcadia, California 91006.

27.    Allstar developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

28.    **Defendant Amerex Corporation** ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

29.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

30.    **Defendant Archroma U.S. Inc.** ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

31.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are

the subject of this Complaint. Further, Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

32.     **Defendant Arkema, Inc.** ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

33.     Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.     **Defendant BASF Corporation** ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

35.     BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

36.     **Defendant Buckeye Fire Equipment Company** ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

37.     Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.     **Defendant Carrier Global Corporation** ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

39.     Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

40.     **Defendant CB Garment, Inc.** ("CrewBoss") is a Delaware corporation and does business throughout the United States. CrewBoss has its principal place of business at 830 Wilson Street, Eugene, Oregon 97402.

41.     CrewBoss developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

42.     **Defendant ChemDesign Products, Inc.** ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

43.     ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

44.     **Defendant Chemguard, Inc.** ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

45.     Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

46.     **Defendant Chemicals Incorporated** ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

47.     Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

48.     **Defendant Chemours Company FC, LLC** ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

49.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

50.     **Defendant Chubb Fire Ltd.** ("Chubb") is a foreign private limited company, with

offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

51.    Chubb is part of UTC Climate, Controls, & Security, a unit of Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon").

52.    Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

53.    **Defendant Clariant Corporation** ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

54.    Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

55.     **Defendant Corteva, Inc.** ("Corteva") is a Delaware corporation that conducts business throughout the United States. Its principal place of business is at Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

56.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

57.     **Defendant Daikin America, Inc.** ("Daikin") is a Delaware corporation and does business throughout the United States. Daikin has its principal place of business at 20 Olympic Drive, Orangeburg, New York 10962.

58.     Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

59.     **Defendant Deepwater Chemicals, Inc.** ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E. County Road 735, Woodward, Oklahoma 73801.

60.     Deepwater designed, marketed, developed, manufactured, distributed, released,

14

trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

61.    **Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.)** ("DowDuPont") is a Delaware corporation and does business throughout the United States. DowDuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDuPont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

62.    DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

63.    **Defendant Dynax Corporation** ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

64.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Dynax designed, marketed,

developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

65.    **Defendant E. I. du Pont de Nemours and Company** ("DuPont") is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

66.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

67.    **Defendant Fire-Dex, LLC** ("Fire-Dex") is a Delaware corporation and does business throughout the United States. Fire-Dex has its principal place of business at 780 South Progress Drive, Medina, Ohio 44256.

68.    Fire-Dex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

69.    **Defendant Fire Service Plus, Inc.** ("Fire Service Plus") is a Georgia corporation and does business throughout the United States. Fire Service Plus has its principal place of business at 5446 Katherine Street, Simi Valley, California 93063.

70.    Fire Service Plus developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

71.    **Defendant Globe Manufacturing Company LLC** ("Globe") is a New Hampshire corporation and does business throughout the United States. Globe has its principal place of business at 37 Loudon Road, Pittsfield, New Hampshire 03263.

72.    Globe developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

73.    **Defendant Honeywell Safety Products USA, Inc.** ("Honeywell") is a Delaware corporation and does business throughout the United States. Honeywell has its principal place of business at 300 South Tryon Street, Suite 500, Charlotte, North Carolina 28202.

74.    Honeywell developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

75.    **Defendant Innotex Corp.** ("Innotex") is a Delaware corporation and does business throughout the United States. Innotex has its principal place of business at 2397 Harts Ferry Road, Ohatchee, Alabama 36271.

76.    Innotex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

77.    **Defendant Johnson Controls, Inc.** ("Johnson Controls") is a Delaware corporation and does business throughout the United States. Johnson Controls has its principal place of business at 5757 North Green Bay Avenue, Milwaukee, Wisconsin 53201.

78.    Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals

and/or products added to AFFF which contained PFAS for use in firefighting.

79.    **Defendant Kidde PLC, Inc.** ("Kidde PLC") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde PLC has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

80.    Kidde PLC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Kidde PLC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

81.    **Defendant L.N. Curtis & Sons** ("LN Curtis") is a California corporation and does business throughout the United States. LN Curtis has its principal place of business at 185 Lennon Lane, Suite 110, Farmington, Connecticut 94598.

82.    LN Curtis developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

83.    **Defendant Lion Group, Inc**. ("Lion") is an Ohio corporation and does business throughout the United States. Lion has its principal place of business at 7200 Poe Avenue, Suite 400, Dayton, Ohio 45414.

84.    Lion developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

85.    **Defendant Mallory Safety and Supply LLC.** ("Mallory") is a Washington

corporation and does business throughout the United States. Mallory has its principal place of business at 1040 Industrial Way, Longview, Washington, 98632.

86.     Mallory developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

87.     **Defendant Mine Safety Appliances Company, LLC** ("MSA") is a Pennsylvania corporation and does business throughout the United States. MSA has its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.

88.     MSA developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

89.     **Defendant Milliken & Company** ("Milliken") is a Delaware corporation and does business throughout the United States. Milliken has its principal place of business at 920 Milliken Road, Spartanburg, South Carolina 29303.

90.     Milliken developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

91.     **Defendant Municipal Emergency Services, Inc.** ("MES") is a Nevada corporation and does business throughout the United States. MES has its principal place of business at 12 Turnberry Lane, Sandy Hook, Connecticut 06482.

92.     MES developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

93.     **Defendant Nation Ford Chemical Company** ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

94.     Nation Ford designed, marketed, developed, manufactured, distributed, released,

trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

95.    **Defendant National Foam, Inc.** ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina 27501.

96.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

97.    **Defendant PBI Performance Products, Inc.** ("PBI") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business at 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273.

98.    PBI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

99.    **Defendant Perimeter Solutions, LP** ("Perimeter") is a Delaware corporation and does business throughout the United States. Perimeter has its principal place of business at 10667 Jersey Blvd., Rancho Cucamonga, California 91730.

100.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

101.    **Raytheon Technologies Corporation** ("Raytheon Technologies") is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business located at 1000 Wilson Boulevard in Arlington, Virginia 22209. Raytheon does and/or has done business throughout the United States and manufactured and sold PFAS and/or AFFF containing PFAS.

102.    Raytheon Technologies is the parent company of UTC Fire and Security.

103.    Upon information and belief, Raytheon Company and Collins Aerospace are subsidiaries of Raytheon Technologies.

104.    **Defendant Ricochet Manufacturing Company, Inc.** ("Ricochet") is a Pennsylvania corporation and does business throughout the United States. Ricochet has its principal place of business at 4700 Wissahickon Avenue, Suite 112, Philadelphia, Pennsylvania 19144.

105.    Ricochet developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

106.    **Defendant Safety Components Fabric Technologies, Inc.** ("SCI") is a Delaware corporation and does business throughout the United States. SCI has its principal place of business 40 Emery Street, Greenville, South Carolina 29605.

21

107. SCI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

108. **Defendant Southern Mills, Inc.** ("Southern Mills") is a Georgia corporation and does business throughout the United States. Southern Mills has its principal place of business at 6501 Mall Boulevard, Union City, Georgia 30291.

109. Southern Mills developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

110. **Defendant Stedfast USA, Inc.** ("Stedfast") is a Delaware corporation and does business throughout the United States. Stadfast has its principal place of business at 800 Mountain View Drive, Piney Flats, Tennessee 37686.

111. Stedfast developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

112. **Defendant The Chemours Company** ("Chemours") is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

113. Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

22

114. **Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company** ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

115. Tyco is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Tyco/Ansul designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

116. **Defendant United Technologies Corporation** ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

117. United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

118.    **Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.)** ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

119.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

120.    **Defendant Veridian Limited** ("Veridian") is an Iowa corporation and does business throughout the United States. Veridian has its principal place of business at 3710 West Milwaukee Street, Spencer, Iowa 51301.

121.    Veridian developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

122.    **Defendant W.L. Gore & Associates Inc.** ("Gore") is a Delaware corporation and does business throughout the United States. Gore has its principal place of business at 1901 Barksdale Road, Newark, Delaware 19711.

123.    Gore developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

124.    **Defendant Witmer Public Safety Group, Inc.** ("Witmer") is a Pennsylvania corporation and does business throughout the United States. Witmer has its principal place of

24

business at 101 Independence Way, Coatesville, Pennsylvania 19320.

125.    Witmer developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

126.    When reference is made in this Complaint to any act or omission of any of Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

127.    The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint, jointly and severally, unless otherwise stated.

128.    The term "TOG Defendant" or "TOG Defendants" refers to all Defendants names herein who developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

129.    The term "DuPont Defendants" refers to the business entity defendants DuPont, New Dupont, DowDupont, Chemours FC, and Corteva.

## FACTUAL ALLEGATIONS

130.    PFOS, PFOA, PFNA, PFBS, PFHxS and HPFO (Gen-X) fall within a class of chemicals known as per- and polyfluoroalkyl substances ("PFAS"). PFAS are found within the fluorochemical products defined above. For purposes of this complaint, the term PFAS will refer

to the chemicals detailed in this paragraph collectively as well as their precursors and derivatives.

131.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds, which is a reason why these molecules are so persistent. Fluorochemical products that contain eight an eight-carbon chain are sometimes referred to as "C8".

132.    PFOA is a fluorosurfactant that repels oil, grease, and water.  PFOA, and/or its chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires.

133.    Fluorochemical products are non-naturally-occurring, man-made chemicals that were first developed in the late 1930s to 1940s and put into large scale manufacture and use by the early 1950s.

134.    Fluorochemical products are water soluble and can migrate readily from soil to groundwater, where they can be transported long distances.

135.    Fluorochemical products are thermally, chemically and biologically stable and resistant to biodegradation, atmospheric photo- oxidation, direct photolysis and hydrolysis.

136.    Fluorochemical products are readily absorbed in animal and human tissues after oral exposure, dermal exposure, and inhalation, and accumulate in the serum, kidney, and liver.

137.    Defendants' manufacturing, handling and/or distributing of fluorochemical products resulted in the release of fluorochemical products into the air, surface waters, ground water, soil and landfills.

138.    Fluorochemical products have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

139.    Fluorochemical products are persistent in the human body. An acute exposure can result in a body burden that persists for years and can increase with additional exposures.

140.    Water processed by typical municipal water treatment plants does not result in the removal, filtration, or treatment of fluorochemical products.

141.    Defendants marketed, developed, distributed, sold, manufactured, released, trained users on, produced instructional materials for and/or otherwise handled and/or used fluorochemical products, including in areas where Plaintiff has resided, in such a way as to cause the contamination of Plaintiff's public drinking water source.

142.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

143.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

144.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

145.    AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

146.    AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the

contamination of Plaintiff's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiff.

147. AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

148. PFAS are a family of chemical compounds containing fluorine and carbon atoms.

149. PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

150. Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

<u>AFFF / PFAS Hazardous Effects on Humans</u>

151. AFFF and its components are associated with a wide variety of adverse health effects in humans.

152. Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, and other severe medical issues.

153. By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

154. By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least

PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

155.    By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

156.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

157.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

158.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

159.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated

incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

160.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

161.    By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

162.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

163.    By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as

increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

164.    When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

165.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

166.    AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

167.    By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

168.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

169.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including

Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

170.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

171.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

172.    At all relevant times, AFFF Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

32

173.    As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

174.    There is no naturally occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

175.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff from discovering the existence and extent of any injuries/harm as alleged herein.

176.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

177.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiff's blood.

178.    At all relevant times, Defendants encouraged the continued and even further

increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

179.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

180.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

181.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

182.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of

the blood and/or body of Plaintiff with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

183.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiff would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiff.

184.    Defendants did not seek or obtain permission or consent from Plaintiff before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiff's exposure to AFFF and the contamination of Plaintiff's blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in his blood and/or body.

<u>Defendants' History of Manufacturing and Selling AFFF</u>

185.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s. In the 1960s, 3M used its fluorination process to develop AFFF.

186.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

187.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

188.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

189.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk."  In communications with the EPA at

2:24-cv-06444-RMG    Date Filed 11/14/24    Entry Number 1    Page 36 of 85

that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

190.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

191.    AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful products off the market.

192.    AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health.

193.    Plaintiff directly used, was exposed to, and/or was given AFFF to help fight fires on a regular basis.

194.    Plaintiff was never informed that this product was inherently dangerous. Nor was Plaintiff warned about the known health risks associated with this product.

195.    Plaintiff never received or was told to use any protective gear to guard against the known dangerous propensities of this product.

196.    AFFF Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would harm human

health.

197.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced AFFF Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

198.    The AFFF Defendants' manufacture, distribution and/or sale of AFFF resulted in Plaintiff and other individuals who came in contact with the chemical to develop cancer.

199.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that Plaintiff and those similarly situated would be harmed.

200.    The AFFF Defendants' products were unreasonably dangerous, and Defendants failed to warn of this danger.

<u>PFAS-Containing Turnout Gear</u>

201.    During firefighting training and when responding to fires and performing fire extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal, chemical, and biological protection for a firefighter. Turnout gear components include individual components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each component of the jacket and pants are made of an outer layer, as well as several inner layers that include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient heat.

202.    PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the outer shell and moisture barrier of turnout gear.

203.    A June 2020 study of turnout gear by researchers at the University of Notre Dame analyzed 30 new and used turnout jackets and pants originally marketed, distributed and sold in 2008, 2014, and 2017, by six turnout gear makers, including Defendants MSA, Globe, Lion and Honeywell and found high levels of PFAS in turnout gear worn, used, or handled by firefighters, including Plaintiff.

204.    When exposed to heat, PFAS chemicals in the turnouts off-gas, break down, and degrade into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals, particles and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or inhalation. Further firefighter exposure to these highly mobile and toxic materials occurs through normal workplace activities, because particles or dust from their turnouts spread to fire vehicles and fire stations, as well as firefighters' personal vehicles and homes.

205.    Such workplace exposure to PFAS or PFAS-containing materials has been found to be toxic to humans. As far back as a July 31, 1980. internal memo, DuPont officials described measures that were needed to prevent workplace exposure to PFOA, which they knew could permeate all protective materials, and noted that PFOA's toxicity varied depending on the exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure is not tolerable."

206.    As alleged herein, Plaintiff wears and/or wore turnouts in the ordinary course of performing his duties, as the turnouts were intended to be used and in a foreseeable manner, which exposed him to significant levels of PFAS.

207.    Plaintiff did not know, and in the exercise of reasonable diligence could not have known, that the turnouts worn or used in the course of performing his duties contained PFAS or

PFAS- containing materials, and similarly did not know and could not have known that he routinely suffered exposure to PFAS or PFAS-containing materials in the turnouts he wore or used in performing his duties. The turnout gear worn or used by Plaintiff did not and does not contain labeling information saying that the gear contains PFAS, and similarly did not and does not warn Plaintiff of the health risks associated with exposure to PFAS.

## CAUSES OF ACTION STEMMING FROM PLAINTIFF'S SERVICE AS A FIREFIGHTER

## COUNT I
## NEGLIGENCE

208.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

209.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

210.    Defendants had a duty to individuals, including Plaintiff, to exercise reasonable ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF or TOG product.

211.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF or TOG products or underlying PFAS containing chemicals used in AFFF or TOG production in one or more of the following respects:

      a.    Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

      b.    Failing to use reasonable care in the testing of the products so as to avoid an

39

unreasonable risk of harm to individuals, including Plaintiff;

      c.      Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

      d.      Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

      e.      Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

      f.      Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

      g.      In selling and or distributing a product which was inherently dangerous to the public.

212.    As a direct and proximate result of Defendants' negligence, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages. But for Defendants' negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of fluorochemicals, thereby causing Plaintiff's injuries.

213.    Defendant's failure to act with reasonable care to: (1) design a product to perform safely; (2) issue an adequate warning or instruction on the use of fluorochemical products; and (3) issue a recall, were substantial factors in causing Plaintiff's harm.

214.    Defendants knew or reasonably should have known that users would not realize the

danger Defendants' fluorochemical products posed to human health and the environment.

215.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

216.    Defendants' negligent acts and omissions directly and proximately caused Plaintiff's illnesses alleged above, and continue to directly and proximately cause damage to Plaintiff in the form of severe personal injuries, pain, suffering, and emotional distress.

217.    Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

218.    It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Plaintiff including the injuries and damages that Plaintiff suffers.

219.    The acts and omissions of Defendants were negligent, and as a direct and proximate result Plaintiff, has suffered and will continue to suffer damages, including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, annoyance, inconvenience, loss of enjoyment of life and other damages under the law and circumstances, which Plaintiff is entitled to recover.

220.    As a result of Defendants' negligence, Defendants are liable to Plaintiff in damages.

## COUNT II
### PAST AND CONTINUING TRESSPASS AND BATTERY

221.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

222.    Plaintiff brings this cause of action pursuant to all relevant common law and state

statutory provisions.

223.    At all relevant times, Defendants possessed knowledge that the AFFF or TOG containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio- accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in Plaintiff's blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiff's blood.

224.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in Plaintiff's blood and/or body, and such PFAS persisting and accumulating in Plaintiff's blood and/or body.

225.    Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in Plaintiff's blood and/or body.

226.    Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's person and unreasonably interfered with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

227.    At all relevant times, the PFAS present in the blood of Plaintiff originated from Defendants' acts and/or omissions.

228.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact

with Plaintiff that resulted in persisting and accumulating levels of PFAS in Plaintiff's blood.

229.    Plaintiff, and any reasonable person, would find the contact at issue harmful and/or offensive.

230.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

231.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

232.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a continuing and/or permanent trespass and battery.

233.    The presence of PFAS in the blood and/or body of Plaintiff altered the structure and/or function of such blood and/or body parts and resulted in cancer.

234.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

235.    Defendants are liable to Plaintiff in damages.

## COUNT III
## PRODUCTS LIABILITY INADEQUATE WARNING/FAILURE TO WARN

236.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

237.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

238.    Defendants, as manufacturers and sellers of fluorochemical products had a duty to provide adequate warnings or instructions about the dangers of their products.

239.    Defendants had this duty even if the product was perfectly designed and manufactured.

240.    Defendants' warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

241.    Defendants' failure to adequately warn and/or instruct existed before the fluorochemical products left the Defendants' control.

242.    Defendants' fluorochemical products were not substantially altered after they left Defendants' control.

243.    Defendants knew or should have known:

a.    exposure to AFFF or TOG containing PFAS was hazardous to human health;

b.    the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF or TOG containing PFAS was hazardous to human health; and

c.    the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF or TOG containing PFAS would result in the contamination of Plaintiff's blood and/or body as a result of exposure.

244.    Defendants had a duty to warn of the hazards associated with AFFF or TOG

containing PFAS entering the blood and/or body of Plaintiff because they knew of the dangerous, hazardous, and toxic properties of AFFF or TOG containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF or TOG products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiff.

245.    Adequate instructions and warnings on the AFFF or TOG containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff. If Defendants provided adequate warnings:

      a.    Plaintiff could have and would have taken measures to avoid the risk and/or lessen exposure; and

      b.    end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiff. Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries from PFAS that came from the use, storage, and disposal of AFFF or TOG containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF or TOG containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF or TOG a defective product.

246.    Defendants were negligent in their failure to provide Plaintiff with adequate warnings or instruction that the use of their AFFF or TOG products would cause PFAS to be released into the blood and/or body of Plaintiff. As a result of Defendants' conduct and the resulting contamination, Plaintiff suffered severe personal injuries by exposure to AFFF or TOG containing PFAS.

247.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to

hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

## COUNT IV
## PRODUCTS LIABILITY- DESIGN DEFECT -CONSUMER EXPECTATIONS

248. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

249. Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

250. At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

251. At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

252. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of fluorochemicals, Defendants owed a duty to not manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

253. Plaintiff, and Plaintiff's community including the fire department and other public entities funded by Plaintiff's tax dollars, used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

254. Defendants' fluorochemical products fail to meet the Plaintiff's reasonable expectation that said products are reasonably suitable and safe for human use or exposure.

46

255.    Defendants' fluorochemical products, when used as intended or in a reasonably foreseeable manner by Plaintiff and Plaintiff's community, did not perform as safely as an ordinary consumer would have expected because fluorochemical products are carcinogens and are otherwise harmful to human health and the environment.

256.    Defendants' defective design of the fluorochemical products was far more dangerous than an ordinary consumer, such as the Plaintiff would expect when used, as Plaintiff and Plaintiff's community did, in an intended and reasonably foreseeable manner.

257.    At all times relevant, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in the condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

258.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

259.    At all times relevant, these alternative designs and/or formulations were available, practical, and feasible. These safer designs include AFFF agents utilizing 6:2 FTS, PFHxA, their precursors and derivatives, as well as other PFAS which carry a lower risk of bioaccumulation, persistence, and toxicity for firefighters like Plaintiff.

260.    The use of these alternative designs would have reduced or prevented the harm, including those reasonably foreseeable, to human health that was caused by Defendant's manufacture, marketing, and/or sale of fluorochemical products without impacting the products' utility.

261.    The risk of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to consumers or users in the vicinity of the AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not

have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

262.    Defendants' fluorochemical products' failure to perform safely was a substantial factor in causing Plaintiff's harm.

263.    But for Defendants' fluorochemicals products failure to perform safely, Plaintiff would not have suffered the damages alleged herein.

264.    Defendants knew or should have known:

a.    exposure to AFFF or TOG containing PFAS is hazardous to human health;

b.    the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

c.    the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiff and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff.

265.    Knowing of the dangerous and hazardous properties of the AFFF or TOG containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF or TOG that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiff caused by Defendants' design, manufacture, marketing, distribution, and sale of AFFF or TOG containing hazardous and toxic PFAS.

266.    The AFFF or TOG containing PFAS that was designed, manufactured, marketed, distributed, and sold by Defendants was so hazardous, toxic, and dangerous to human health that

the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

267.    The AFFF or TOG designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF or TOG containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Plaintiff and the persistence and accumulation of PFAS in Plaintiff's blood and/or body.

268.    Defendants' defective design and formulation of AFFF or TOG containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiff. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiff has been exposed to AFFF or TOG containing PFAS and other toxic substances and has developed cancer.

269.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

270.    As a result of Defendants' design and formulation of a defective product, Defendants are liable and/or strictly liable in damages to Plaintiff.

## COUNT V
## STRICT LIABILITY (STATUTORY)

271.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

272.    Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each Defendant.

273.    Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF or TOG.

274.    The AFFF or TOG was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

275.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

276.    Defendants are strictly liable in tort for their wrongful conduct.

## COUNT VI
## STRICT LIABILITY (RESTATEMENT)

277.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

278.    Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

279.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by Defendants the AFFF or TOG product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including Plaintiff.

280.    Defendants had available reasonable alternative designs which would have made the

AFFF or TOG product safer and would have most likely prevented the injuries and damages to Plaintiff, thus violating state law and the Restatement of Torts.

281. Defendants failed to properly and adequately warn and instruct Plaintiff as to the proper safety and use of Defendants product.

282. Defendants failed to properly and adequately warn and instruct Plaintiff regarding the inadequate research and testing of the product.

283. Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

284. As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

285. By reason of the foregoing, Defendants are strictly liable for the injuries and damages suffered by Plaintiff, caused by these defects in the AFFF or TOG product.

## COUNT VII
## FRAUDULENT CONCEALMENT

286. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

287. Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

288. Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

289. Defendants fraudulently concealed from and/or failed to disclose to or warn

Plaintiff, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

290.    Defendants were under a duty to Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

        a.    Defendants were in a superior position to know the true quality, safety and efficacy of Defendants' products;

        b.    Defendants knowingly made false claims about the safety and quality of Defendants' product in documents and marketing materials; and

        c.    Defendants fraudulently and affirmatively concealed the defective nature of Defendants' products from Plaintiff.

291.    The facts concealed and/or not disclosed by Defendants to Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use Defendants' products.

292.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that Plaintiff would use Defendants' products, Plaintiff justifiably acted or relied upon, to Plaintiff's detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiff's use of Defendants' products.

293.    Defendants, by concealment or other action, intentionally prevented Plaintiff from acquiring material information regarding the lack of safety and effectiveness of Defendants' products and are subject to the same liability for Plaintiff's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that Plaintiff was thus prevented from discovering the

truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, *inter alia*, Restatement (Second) of Torts §550 (1977).

294.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

## COUNT VIII
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

295.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

296.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions. At all times relevant hereto, Defendants manufactured, marketed, labeled, and sold the AFFF or TOG products that has been previously alleged and described herein.

297.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF or TOG products, Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

298.    Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by Plaintiff.

299.    Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

300.    Defendants breached their implied and/or express warranties and did not meet the

expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

301.    As a direct and proximate result of Defendants' conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

## COUNT IX
## GROSS NEGLIGENCE
## WANTON AND WILLFUL CONDUCT

302.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

303.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

304.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF or TOG products, including Plaintiff.

305.    Defendants owed a duty of care that was commensurate with the inherently dangerous, harmful and toxic nature of fluorochemical products.

306.    Defendants breached the duty of care owed to Plaintiff breached their duty of reasonable care when they issued inadequate instructions on how fluorochemical products should be properly used and disposed of.

307.    As a direct and proximate result of Defendants' grossly negligent conduct, Plaintiff was exposed to hazardous and toxic chemicals which proximately caused Plaintiff's

injury, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including but not limited to medical expenses, lost income, and/or other damages.

308.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF or TOG products, including Plaintiff.

## COUNT X
## NEGLIGENCE *PER SE*

309.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

310.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

311.    One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of care on Defendants with regard to Defendants' actions and/or omissions towards Plaintiff and/or Plaintiff's safety.

312.    By Defendants' acts and/or omissions resulting in harm to Plaintiff, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence *per se*, including liability for all injuries to Plaintiff associated with the fluorochemical products.

313.    Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly and proximately cause damage to Plaintiff in the form of economic damage and bodily injury for which Defendants are liable.

## COUNT XI
## FRAUDULENT TRANSFER, 6 DEL. C. § 1304
### (DUPONT DEFENDANTS)

314.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

315.    Under Delaware Code Title 6, § 1304:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
    a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
    b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

316.    Plaintiff is a "Creditor" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

317.    The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

318.    Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and they were engaged in or about to engage in a business for which the remaining assets were unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

319.    On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors such as Plaintiff, with

56

claims related to PFAS contamination.

320.    On information and belief, at the time of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

321.    In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit along with a vast amount of environmental liabilities – including all those related to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

322.    On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

323.    On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

324.    In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS-containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

325.    In further restructuring, DuPont sought to further protect its assets from PFAS

liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

326.    As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization with the net effect being the transfer of a substantial portion of its valuable assets to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

327.    As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

328.    On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

329.    On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

330.    On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20

billion.

331.    The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

332.    Plaintiff has been harmed by these transactions, which were designed to shield assets from creditors such as Plaintiff, which have been damaged by DuPont's conduct.

333.    Plaintiff is entitled to void these transactions and to recover property or value transferred under 6 Del. C. § 1307.

## ADDITIONAL AND ALTERNATE CAUSES OF ACTION RESULTING FROM GROUNDWATER CONTAMINATION

## COUNT XII
## PRODUCTS LIABILITY – DEFECTIVE DESIGN – CONSUMER EXPECTATIONS

334.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

335.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

336.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

337.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

338.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers,

and/or marketers of fluorochemicals, Defendants owed a duty to not manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

339.    Plaintiff, and Plaintiff's community including the fire department and other public entities funded by Plaintiff's tax dollars, used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

340.    Defendants' fluorochemical products fail to meet the Plaintiff's reasonable expectation that said products are reasonably suitable and safe for human use or exposure.

341.    Defendants' fluorochemical products, when used as intended or in a reasonably foreseeable manner by Plaintiff and Plaintiff's community, did not perform as safely as an ordinary consumer would have expected because fluorochemical products are carcinogens and are otherwise harmful to human health and the environment.

342.    Defendants' defective design of the fluorochemical products was far more dangerous than an ordinary consumer, such as the Plaintiff would expect when used, as Plaintiff and Plaintiff's community did, in an intended and reasonably foreseeable manner.

343.    At all times relevant, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in the condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

344.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

345.    At all times relevant, these alternative designs and/or formulations were available, practical, and feasible. These safer designs include AFFF agents utilizing 6:2 FTS, PFHxA, their precursors and derivatives, as well as other PFAS which carry a lower risk of bioaccumulation,

persistence, toxicity, and otherwise pose a lower risk of contaminating drinking water supplies.

346. The use of these alternative designs would have reduced or prevented the harm, including those reasonably foreseeable, to human health that was caused by Defendant's manufacture, marketing, and/or sale of fluorochemical products without impacting the products' utility.

347. The risk of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to consumers or users in the vicinity of the AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

348. Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Plaintiff's harm.

349. As a direct result of fluorochemical products being utilized as the Defendants intended, fluorochemicals were released into the environment and seeped into public water sources and were ingested by Plaintiff.

350. But for Defendants' fluorochemicals products failure to perform safely, Plaintiff would not have suffered the damages alleged herein.

351. As a direct and proximate result of Defendants' defective design, Plaintiff has suffered and will continue to suffer damages such as medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiff is entitled to recover.

352. As a result of Defendants' design and formulation of a defective product,

Defendants are strictly liable in damages to Plaintiff.

**COUNT XIII**
**PRODUCTS LIABILITY – DEFECTIVE DESIGN - RISK UTILITY**

353.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint as if restated fully herein.

354.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

355.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

356.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

357.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

358.    Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of the Defendants, such that the risks, including those foreseeable, associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

359.    At all times relevant, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in the condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

360.    Defendants' fluorochemical products' failure to perform safely was a substantial

factor in causing Plaintiff's harm.

361.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

362.    At all times relevant, these alternative designs and/or formulations were available, practical, and feasible. These safer designs include AFFF agents utilizing 6:2 FTS, PFHxA, their precursors and derivatives, as well as other PFAS which carry a lower risk of bioaccumulation, persistent, toxicity, and otherwise pose a lower risk of contaminating drinking water supplies.

363.    The use of these alternative designs would have reduced or prevented the harm, including those reasonably foreseeable, to human health that was caused by Defendants' manufacture, marketing, and/or sale of fluorochemical products.

364.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the risks of harm, including those foreseeable, posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

365.    The risk of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to users or consumers in the vicinity of the AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

366.    But for Defendants' fluorochemical products' failure to perform safely, Plaintiff would not have suffered the damages alleged herein.

367.    As a direct result of fluorochemical products being utilized as the Defendants intended, fluorochemicals were released into the environment and seeped into public water sources

63

and were ingested by Plaintiff.

368.    As a direct and proximate result of Defendants' defective design, Plaintiff has suffered and will continue to suffer damages such as medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiff is entitled to recover.

369.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiff.

**COUNT XIV**
**PRODUCTS LIABILITY – FAILURE TO WARN**

370.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

371.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

372.    Defendants, as manufacturers and sellers of fluorochemical products had a duty to provide adequate warnings or instructions about the dangers of their products.

373.    Defendants had this duty even if the product was perfectly designed and manufactured.

374.    Defendants' warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

375.    Defendants' failure to adequately warn and/or instruct existed before the fluorochemical products left the Defendants' control.

376.    Defendants' fluorochemical products were not substantially altered after they left

Defendants' control.

377.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because they are hazardous to human health and the environment.

378.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to persons, such as the Plaintiff.

379.    Ordinary users and/or consumers of Defendants' fluorochemical products would not have recognized the risks.

380.    Defendants failed to adequately warn users and consumers of the potential risks of their fluorochemical products.

381.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided the risks, including those known, knowable, or foreseeable, to Plaintiff's health.

382.    Had Defendants provided adequate warnings, Plaintiff, and Plaintiff's community, including the fire department and other public entities which Plaintiff's tax dollars fund, could have taken measures to avoid or lessen the exposure.

383.    Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective.

384.    The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

385.    Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries.

386.    But for Defendant's failure to provide sufficient warnings regarding their

fluorochemical products' unreasonable dangerousness, Plaintiff would not have suffered the damages alleged herein.

387.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered and will continue to suffer medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, annoyance, inconvenience, loss of enjoyment of life, and other damages under the law, which Plaintiff is entitled to recover.

388.    As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Plaintiff.

**COUNT XV**
**NEGLIGENCE**

389.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

390.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty to Plaintiff to exercise reasonable care in the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, advertising, packaging, labeling, of and the handling, control, use and disposal of Defendants' fluorochemical products, including a duty of care to ensure that its fluorochemical products did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

391.    Defendants also voluntarily assumed a duty towards Plaintiff by affirmatively representing to Plaintiff and Plaintiff's community, including fire departments and other public entities funded by Plaintiff's tax dollars, that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to him, and that Defendants' fluorochemical products were safe to use.

66

392.    Defendants' fluorochemical products are inherently dangerous substances and Defendants' owed a duty of care towards the Plaintiff that was commensurate with the harmful nature of the fluorochemical products and the dangers involved with exposure to fluorochemical products.

393.    Defendants failed to correct, clarify, rescind, and/or qualify its representations to Plaintiff that Defendants' acts and/or omissions were not causing any physical harm and/or damage to Plaintiff, or that the fluorochemical products were safe to use.

394.    Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to exercise reasonable care when they:

    a.    Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products;

    b.    Issued instructions on how fluorochemical products should be used and disposed of;

    c.    Failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and

    d.    Failed and refused to issue appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding, the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

395.    But for Defendants' negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of fluorochemicals, thereby causing Plaintiff's injuries.

396.    Defendant's failure to act with reasonable care to:

a.    design a product to perform safely;

b.    issue an adequate warning or instruction on the use of fluorochemical products; and

c.    issue a recall, were substantial factors in causing Plaintiff's harm.

397.    Defendants knew or reasonably should have known that users would not realize the danger Defendants' fluorochemical products posed to human health and the environment.

398.    Defendants knew or should have known that the design, manufacture, fabrication, sale, release, training users of, production of informational materials about, handling, use and/or distribution of fluorochemicals would likely result in the contamination of Plaintiff's drinking water supply and subsequent harm suffered by Plaintiff.

399.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

400.    Defendants' negligent acts and omissions directly and proximately caused Plaintiff's illnesses alleged above, and continue to directly and proximately cause damage to Plaintiff in the form of severe personal injuries, pain, suffering, and emotional distress.

401.    Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

402.    It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Plaintiff including the injuries and damages that Plaintiff suffers.

403.    The acts and omissions of Defendants were negligent, and as a direct and proximate

result, Plaintiff, has suffered and will continue to suffer damages, including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, fear, annoyance, inconvenience, loss of enjoyment of life and other damages under the law and circumstances, which Plaintiff is entitled to recover.

404.    As a result of Defendants' negligence, Defendants are liable to Plaintiff in damages.

## COUNT XVI
## GROSS NEGLIGENCE

405.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

406.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, users and/or marketers of fluorochemical products, the Defendants owed a duty to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that their fluorochemical products did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

407.    Defendants owed a duty of care that was commensurate with the inherently dangerous, harmful and toxic nature of fluorochemical products.

408.    Defendants failed to exercise ordinary care or diligence by acts and/or omissions that resulted in the contamination of Plaintiff's public drinking water supply with fluorochemical products.

409.    Despite knowing that their fluorochemicals are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants breached their duty of reasonable care when they designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products.

410.    Defendants breached their duty of reasonable care when they issued inadequate

instructions on how fluorochemical products should be used and disposed of.

411.    Defendants further breached their duty of reasonable care when they failed to warn the users of AFFF of the dangers to human health and water contamination as a result of standard use and disposal of these products.

412.    Finally, Defendants breached their duty of reasonable care when they failed and refused to issue the appropriate warnings to the users of fluorochemical products regarding the

413.    proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of its fluorochemical products.

414.    Defendants were conscious of the dangers of fluorochemical products and were conscious that bodily injury to Plaintiff would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions.

415.    Defendants knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that the design, engineering, manufacture, fabrication, sale, release, training of users of, production of informational materials about, handling, use, and/or distribution of fluorochemical products and/or other acts and/or omissions could likely result in the contamination of Plaintiff's public drinking water supply and subsequent physical harm suffered by the Plaintiff.

416.    Defendants knew or reasonably should have known that people reasonably expected to come in contact with Defendants' fluorochemical products or their derivatives would not realize the danger Defendants' product posed to human health.

417.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

418.    Each of the aforementioned acts and/or omissions demonstrates Defendants' lack

of care and total indifference to the safety of others.

419.    Defendants' failure to act with the slightest reasonable care to (1) design a product to perform safely; and (2) issue an adequate warning or instruction on the use of products containing fluorochemical products were substantial factors in causing plaintiff's harm.

420.    Defendants' grossly negligent conduct was the direct and proximate cause of the injuries and harm to Plaintiff as described herein.

421.    Defendants' grossly negligent acts and/or omissions were a substantial factor in causing Plaintiff's exposure to unhealthy levels of fluorochemical products, and subsequent harm.

422.    Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendants' grossly negligent acts or omissions.

423.    As a direct and proximate result of the Defendants' grossly negligent conduct, Plaintiff has suffered and will continue to suffer damages, including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, humiliation, embarrassment, fear, loss of enjoyment of life, annoyance, inconvenience and other damages under the law and circumstances, which Plaintiff is entitled to recover.

## COUNT XVII
## NEGLIGENT MISREPRESENTATION

424.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

425.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemicals were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries

in humans and animals.

426.    Defendants had a duty of care to disclose to consumers and the public, including the Plaintiff, the actual and potential risks of continuing exposure to and/or ingestion of fluorochemicals.

427.    Defendants breached this duty by negligently withholding, misrepresenting, and/or concealing information regarding the dangers of Defendants' fluorochemical products from Plaintiff and the public at large, who had a right to know of information which would have prevented Plaintiff from being exposed and/or continuing to be exposed to Defendants' fluorochemical products.

428.    Defendants negligently represented to the public and regulatory authorities that fluorochemical products were safe for the environment and posed no risk of harm to people.

429.    Consumers and end-users of Defendants' fluorochemical products reasonably relied upon Defendants' statements in continuing to use these products in the manner instructed or directed by Defendants.

430.    As a result of this reliance, fluorochemicals were dispersed into the environment contaminating drinking water supplies, including the Plaintiff's.

431.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendant, Plaintiff unknowingly ingested Defendants' fluorochemicals and developed ulcerative colitis.

432.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered damages, therefore, Defendants are liable to Plaintiff.

**COUNT XVIII**
**FRAUDULENT CONCELAMENT**

433.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

434.    For at least several decades, Defendants were aware of the bio-accumulative and bio-persistent nature of the fluorochemicals they manufactured.

435.    Defendants were also aware of fluorochemicals' potentially harmful effects to humans.

436.    Despite knowledge of the risk of fluorochemical products they manufactured, Defendants falsely represented to consumers, regulators and the public that its products were safe for the environment and posed no risk of harm to people.

437.    The safety risks associated with fluorochemicals and fluorochemical containing products, like AFFF, are material facts.

438.    Defendants knew this information was false.

439.    Defendants knowingly, intentionally, maliciously, and/or willfully failed and/or refused to advise Plaintiff and the public of the dangers and/or health risks posed by Defendants' fluorochemicals.

440.    Defendants knowingly, intentionally, maliciously, and/or willfully deceived the Plaintiff by alleging Defendants' fluorochemicals were harmless to human health.

441.    Defendants intended to deceive the public, including the Plaintiff, when they made the aforementioned false representations and withheld information regarding the risks of fluorochemical product use and exposure and/or ingestion of fluorochemicals.

442.    Consumers and end-users of Defendants' products reasonably relied upon Defendants' statements in continuing to use these products.

443.    As a result of this reliance, fluorochemical products and fluorochemicals were

dispersed into the environment contaminating drinking water supplies, including the Plaintiff's.

444.    Had the Plaintiff known that these fluorochemical products, such as AFFF, were contaminating the drinking water, Plaintiff could have taken steps to reduce or prevent exposure.

445.    However, since the Plaintiff was not aware of these risks, or that the contamination was occurring, Plaintiff was unable to take any actions to reduce or prevent exposure.

446.    As a direct and proximate result of the Defendants' concealment of the safety risks associated with their fluorochemical products, Plaintiff was unknowingly exposed to fluorochemicals for years and developed cancer.

447.    Defendants are liable in damages to the Plaintiff.

## COUNT XIX
## NEGLIGENCE *PER SE*

448.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

449.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

450.    One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of care on Defendants with regard to Defendants' actions and/or omissions towards Plaintiff and/or Plaintiff's safety.

451.    By Defendants' acts and/or omissions resulting in harm to Plaintiff, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence *per se*, including liability for all injuries to Plaintiff associated with the fluorochemical products.

74

452.     Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly and proximately cause damage to Plaintiff in the form of economic damage and bodily injury for which Defendants are liable.

## COUNT XX
## PAST AND CONTINUING TRESSPASS AND BATTERY

453.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

454.     Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

455.     Despite such knowledge, Defendants continued to use and sell the fluorochemical products, which caused harmful physical contact with Plaintiff.

456.     Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff demonstrate intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause.

457.     Defendants' intentional acts and/or omissions have resulted in fluorochemical products, in the body of Plaintiff or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemical products in Plaintiff's body, which interferes with Plaintiff's rightful use and possession of Plaintiff's body.

458.     The fluorochemicals present in Plaintiff's body originating from Defendants' fluorochemical products was at all relevant times hereto, and continues to be, the property of Defendants.

459.     The invasion and presence of the fluorochemical products in and/or on Plaintiff's body was and continues to be unconsented and without permission or authority from Plaintiff or

anyone who could grant such permission or authority.

460.    Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Plaintiff's body were substantially certain to result from those acts and/or omissions.

461.    Harmful contact with Plaintiff's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

462.    The presence and continuing presence of the fluorochemical products in Plaintiff's body is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

463.    Defendants' past and continuing trespass and battery upon Plaintiff's body directly and proximately caused and continues to directly and proximately cause damage to Plaintiff in the for which Defendants' are liable including medical and hospital bills, physical injury, economic damages, severe emotional distress, mental pain and suffering, recurrence, humiliation, fear, annoyance, inconvenience, loss of enjoyment of life and other damages under the law and circumstances.

## <u>COUNT XXI</u>
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

464.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

465.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller and/or marketer of fluorochemical products, the Defendants owed a duty to exercise reasonable care in

466.    the designing, instructing, labeling and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that fluorochemical products did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

467.    Defendants owed a duty of care that was commensurate with the inherently dangerous, harmful, and toxic nature of their fluorochemical products.

468.    Defendants failed to exercise ordinary care by acts and/or omissions that resulted in the contamination of Plaintiff's public drinking water supply with their fluorochemical products.

469.    Specifically, Defendants negligently polluted the environment, despite Defendants knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm when ingested, such as Plaintiff did.

470.    Defendants' acts and/or omissions were negligent, including Defendants' continued pollution of the environment and resultant exposure of Plaintiff to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

471.    At the time of Defendants' negligent acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to those exposed to fluorochemicals, including Plaintiff.

472.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress, to Plaintiff.

473.    Defendants' acts and/or omissions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and emotional distress.

474.    As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental, and emotional distress.

475.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that Defendants have negligently exposed them to years of harmful contact with

Defendants' fluorochemical products, including PFOA or PFOS and/or their precursor chemicals, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

476.    Defendants' negligent actions were a substantial factor in causing Plaintiff's severe physical, mental and emotional distress.

477.    Defendants are liable for damages to Plaintiff.

## COUNT XXII
## INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

478.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

479.    Defendants' acts and/or omissions were intentional and/or reckless including Defendants' continued pollution of the environment and resultant exposure of harmful fluorochemical roducts to the Plaintiff, despite Defendant knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

480.    Defendants knowingly and/or intentionally withheld and concealed material information and/or affirmatively misrepresented that fluorochemical products were not causing or creating any risk of harm to the human body and environment, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

481.    At the time of Defendants' knowing and/or intentional acts and/or omissions, it was foreseeable to Defendants, and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to those exposed to fluorochemical products, including Plaintiff.

482.    Defendants' acts and/or omissions were extreme, outrageous, intolerable and/or

2:24-cv-06444-RMG    Date Filed 11/14/24    Entry Number 1    Page 79 of 85

offended the generally accepted standards of decency and morality.

483.    By continuing to expose Plaintiff to harmful fluorochemical products and continuing to misrepresent that the fluorochemical products were not harmful and would not cause risk of harm and/or continuing to withhold and/or conceal material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous and intolerable manner which offended any generally accepted standard of decency and morality.

484.    Defendants' acts and/or omissions resulting in defendants' concealment and/or misrepresentations, directly and proximately caused physical harm and continue to cause physical harm, to Plaintiff.

485.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress to Plaintiff.

486.    Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental and emotional distress.

487.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities having knowingly and/or intentionally exposed them to years of harmful contact with fluorochemical products and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

488.    As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental and emotional distress.

## **TOLLING THE STATUTE OF LIMITATIONS**

489.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

## Discovery Rule Tolling

490.    Plaintiff had no way of knowing about the risk of serious injury associated with the use of and exposure to AFFF or TOG until very recently.

491.    Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF or TOG is harmful to human health.

492.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF or TOG; nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF or TOG could cause personal injury.

493.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## Fraudulent Concealment Tolling

494.    All applicable statute of limitations and statutes of repose have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

495.    Instead of disclosing critical safety information regarding AFFF or TOG, and/or underlying chemicals and/or products added to AFFF or TOG, AFFF Defendants and TOG Defendants have consistently and falsely represented the safety of AFFF or TOG products.

496.    This fraudulent concealment continues through present day.

497.    Due to this fraudulent concealment, all applicable statutes of limitations and

statutes of repose have been tolled with respect to Plaintiff's claims.

498.    Plaintiff did not know and could not have reasonably known that his personal injuries were caused by or contributed to by the use of and exposure to AFFF or TOG until sometime within the past year.

<u>Tolling Pursuant to 42 U.S.C. § 9658</u>

499.    The federally required commencement date for the running of the statute of limitations begins running on the date Plaintiff knew or reasonably should have known that the personal injury was caused or contributed to by his exposure pursuant to 42 U.S.C. § 9658. Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF or TOG; nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF or TOG could cause personal injury.

500.    For these reasons, applicable state statutes of limitations have been tolled by operation of the discovery rule pursuant to 42 U.S.C. § 9658 with respect to Plaintiff's claims.

<u>Estoppel</u>

501.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF. Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## CLAIM FOR PUNITIVE DAMAGES

502.    Plaintiff hereby re-alleges and reiterates each and every allegation in the preceding

paragraphs as if fully restated herein.

503.    At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that that contaminated Plaintiff's drinking water and that resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

504.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products and/or its precursors were toxic chemicals capable of causing harm to human health.

505.    Rather than disclose this information to the public or provide warnings and/or instructions on its products that address this information, Defendant concealed the risks of fluorochemical products and actively represented that fluorochemical products did not present a risk of harm to the environment or human health.

506.    Defendants continued to manufacture, sell, market, distribute, design, formulate and/or supply fluorochemical products for years after learning of the significant risks to the environment and human health.

507.    Defendants' failure to disclose the information regarding the risks of fluorochemical products and their failure to provide adequate warnings and/or instructions as to these risks demonstrate Defendants' reckless disregard for the safety and welfare of the public, including the Plaintiff.

508.    Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to fluorochemical products.

509.    Plaintiff is entitled to punitive damages because Defendants engaged in willful, wanton, malicious, fraudulent and/or reckless conduct, which includes but is not limited to:

     a.     Issuing no warnings and failing to divulge material information concerning the release of fluorochemical products, including but not limited to PFOA and PFOS;

     b.     Failing to take all reasonable measures to ensure fluorochemical products would be used effectively and properly disposed of;

     c.     Failing to prevent the foreseeable impacts of fluorochemical products exposure upon the Plaintiff; and

     d.     Willfully withholding, misrepresenting, and/or concealing information regarding the releases of fluorochemical products release and exposure from Plaintiff, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to fluorochemical products chemicals was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products chemicals.

510.    As a proximate and foreseeable consequence of Defendants' negligent, reckless willful, fraudulent and/or wanton actions and/or intentional failures to act, Plaintiff ingested unreasonably dangerous, toxic, fluorochemical products contaminated water which caused Plaintiff to suffer bodily injuries.

511.    As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe bodily injuries, mental anguish, and emotional distress relating to Plaintiff's bodily injuries caused by Defendants' fluorochemical products.

512.    Defendants have demonstrated a conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

513.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, each of them, jointly and severally, and requests the following relief from the Court:

a.    Compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law, that exceed the jurisdictional limit of this Court;

b.    Punitive damages in an amount sufficient to punish Defendants and deter future similar conduct;

c.    Reasonable fees for attorneys and expert witnesses;

d.    Costs of this lawsuit;

e.    Interest on the damages as by law allowed; and

f.    Any other and further relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Respectfully submitted this 14th day of November, 2024

By: */s/ Nicholas Wilson*
Nicholas Wilson - Counsel for Plaintiff
The Driscoll Firm, PC
434 Fayetteville Street, Suite 560
Raleigh, NC 27601
Phone: (314) 932-3232
Fax: (314) 932-3233
nicholas@thedriscollfirm.com

John J. Driscoll - Counsel for Plaintiff
The Driscoll Firm, LLC
1311 Avenida Ponce de Leon, Suite 501
San Juan, PR 00907
Phone: (314) 932-3232
Fax: (314) 932-3233
john@thedriscollfirm.com

Heidi J. Johnson - Counsel for Plaintiff
The Driscoll Firm, PC
211 N. Broadway, Ste 4050
St. Louis, MO 63102
Phone: (314) 932-3232
Fax: (314) 932-3233
heidi@thedriscollfirm.com